UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

IN RE:

    SHERRIE LUCAS,

        Debtor.

Case No. 11-30905-dof
Chapter 13 Proceeding
Hon. Daniel S. Opperman

_____/

SHERRIE LUCAS,

        Plaintiff/Counter-Defendant,

v.

ROBERT E. DELANEY,

        Defendant/Counter-Plaintiff/
        Third-Party Plaintiff,

v.

CITIZENS BANK, a Michigan state chartered bank; PHH MORTGAGE CORPORATION, a foreign corporation; MARDA T. LUCAS, an individual; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign Corporation; and the SECRETARTY OF HOUSING AND URBAN DEVELOPMENT,

        Third-Party Defendants.

Adversary Proceeding
Case No. 11-03174-dof

_____/

## **OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PROCEDURAL BACKGROUND AND FACTS

On February 25, 2011, Sherrie Lucas ("Lucas") filed a Chapter 13 bankruptcy petition. Lucas owns property located at 411 Wheeler Road, Fowlerville, Michigan (the "Property").

1

Lucas and her ex-husband entered into a land contract to purchase the Property, which was then a vacant property consisting of four separate parcels, on April 11, 1983. On April 20, 1987, Lucas and her ex-husband were divorced and pursuant to the Judgment of Divorce, her ex-husband conveyed his interest in the Property to her by quitclaim deed.

In early 1989, Lucas began a dating relationship with Robert Delaney ("Delaney"). Delaney asserts that Lucas made numerous express or implied representations to him during the course of their more than fifteen year relationship that, if he agreed to finance the purchase of the Property and the construction of a log cabin home on the Property, she would add his name to the title and he would hold a joint ownership interest in the Property.

Delaney claims that, in reliance on those representations, he made the following payments associated with the Property: (1) between June 1, 1989, and May 20, 1994, payments in the amount of at least $7,450.00 toward the land contract for the purchase of the Property; and (2) between February 28, 1990, and December 15, 1993, the real estate taxes for the Property in the amount of at least $4,620.80. The land contract was paid off on April 1, 1994, and the land contract vendors conveyed all four parcels to Lucas via warranty deeds on the following dates: (1) Parcel 8 was conveyed on April 1, 1994, and the deed was recorded on May 20, 1994; (2) Parcel 9 was conveyed on May 20, 1994, and the deed was recorded that same date; (3) Parcels 7 and 10 were conveyed on June 14, 1994, and the deeds were recorded on December 30, 2003. Delaney claims that Lucas represented to him that he had also been granted ownership rights to the Property at those times.

Delaney claims that, in reliance on Lucas's representations, on April 6, 1994, he applied jointly with Lucas for a mortgage loan from NBD Mortgage Company ("NBD") to finance the construction of a log cabin home on Parcels 8 and 9 of the Property. On May 13, 1994, Delaney

and Lucas executed a promissory note in the amount of $115,000.00, mortgage documents, and other related documents. Chelsea Lumber Company was the designated mortgagee to facilitate Delaney being his own general contractor during the construction of the log cabin home. The mortgage was recorded on June 8, 1994, in the Livingston County Register of Deeds.

Delaney acted as the general contractor for the construction of the log cabin home on the Property and he claims that he paid at least $47,185.41 for permits, building construction, and other fixtures and improvements to the Property.

In October 1994, Delaney and Lucas applied for a new loan with NBD to refinance the construction loan with Chelsea Lumber Company. On October 26, 1994, Chelsea Lumber Company issued a Discharge of Mortgage. On October 31, 1994, Delaney and Lucas executed a new Adjustable Rate Note in the amount of $116,000.00 and granted a mortgage on the Property to NBD. That mortgage was recorded on November 10, 1994, in the Livingston County Register of Deeds. The monthly payment pursuant to the note was $1,008.25. Delaney claims that he made all of the loan payments to NBD.

In November 1996, Delaney and Lucas applied with NBD for a new loan to refinance their October 1994 mortgage loan. On November 26, 1996, Delaney and Lucas executed a new promissory note in the amount of $116,000.00 and granted a mortgage on the Property to NBD. That mortgage was recorded on January 2, 1996, in the Livingston County Register of Deeds. The monthly payments for that loan were $839.07 and the payments for taxes and insurance ranged between $180.51 and $192.13 per month. Delaney claims that he made all of the loan payments to NBD.

The servicer for the loan changed from NBD to Homeside in March of 1999, and then changed from Homeside to WaMu in December 2001.

Delaney claims that he paid at least $190,825.10 in mortgage payments, including taxes and insurance, for the Property between April 11, 1994, and December 13, 2009. Between 1994 and 2005, Delaney claimed mortgage interest deductions on his Federal income tax returns. Delaney further claims that, over the last twenty years, he has paid at least $25,155.35 for the utilities and over $11,754.22 for maintenance costs at the Property.

Delaney and Lucas's relationship eventually deteriorated. At some point, Lucas attempted to have Delaney evicted from the Property through summary proceedings in the 53rd District Court. Her attempt was unsuccessful. On April 29, 2009, Delaney prepared and filed an Affidavit of Lien Interest against the Property, which was recorded in the Livingston County Register of Deeds on that same date. Subsequent to Delaney's filing of the Affidavit of Lien Interest against the Property, Lucas refinanced the existing mortgage on the Property with two new mortgage loans under which Lucas is obligated and Delaney is not. Thereafter, the parties engaged in litigation over the Property in the Livingston County Circuit Court. That litigation was stayed when Lucas filed her Chapter 13 bankruptcy petition on February 25, 2011.

Lucas filed this adversary complaint against Delaney seeking a determination that his claim is wholly without merit and seeking to avoid an Affidavit of Lien Interest filed by Delaney in the Livingston County Register of Deeds.

Delaney filed an Answer and Affirmative Defenses and a Corrected Amended Answer to the Complaint; a Counterclaim against Lucas, and a Third-Party Complaint against Citizens Bank to Determine the Validity of his Interests in Real Property and to Determine the Dischargeability of Debt.

Delaney also filed a Third-Party Complaint against the Secretary of Housing and Urban Development, Citizens Bank, Marda Lucas, the Mortgage Electronic Registration System, and

4

PHH Mortgage Corporation, which each party answered. The Secretary of Housing and Urban Development has since been dismissed.

Delaney filed a Motion for Summary Judgment as to the Existence and Amount of his Claim. Citizens Bank, PHH Mortgage Corporation, and Lucas filed responses, to which Delaney replied.

The Court held a hearing on Delaney's Motion for Summary Judgment and directed the parties to file post-hearing briefs with regard to (1) whether Delaney has an ownership interest in the Property or holds a valid lien; and (2) whether an equitable lien in favor of Delaney has been imposed on the Property, and, if not, whether this Court has the ability to impose an equitable lien on the Property.

On February 25, 2013, Delaney filed a Motion to Modify the Automatic Stay in the main bankruptcy case, asking the Court to allow him to reopen the state court proceedings in *Lucas v. Delaney*, 44th Michigan Circuit Court, Case No. 10-025017-CZ, in order to continue litigation and to seek a declaration of Delaney's ownership rights to, and/or equitable lien/mortgage against, the Property. Lucas, PHH Mortgage Corporation, and Citizens Bank filed Responses to that Motion. The Court held a hearing on March 20, 2013, and it denied Delaney's Motion, but noted that it would further address the issues raised therein in its Opinion on the pending Motion for Summary Judgment in this case.

The required briefs have been submitted by the parties and the matter is now ripe for decision.

## ARGUMENTS

In his Motion for Summary Judgment, Delaney argues that (1) summary judgment in his favor as to the existence of his claim against the Property is warranted because he is entitled to

5

an equitable lien, if not an outright ownership interest in the Property; (2) summary judgment in his favor is warranted because the undisputed evidence demonstrates the existence of his claim and the amount thereof and that such are non-dischargeable under the standards of § 523(a)(2)(A), (a)(2)(B), and (a)(6).

In her Response to Delaney's Motion for Summary Judgment, the Plaintiff argues that there are genuine issues of material facts in dispute with regard to (1) whether the payments made by Delaney during their relationship constituted rent; (2) whether Delaney made those payments gratuitously during their relationship; (3) whether or not Delaney has a valid claim; and (4) whether Delaney's claim, if such exists, is dischargeable.

In their Responses, PHH Mortgage Corporation and Citizens Bank argue that there are remaining questions of fact regarding (1) whether the funds expended by Delaney to improve the property, repay the mortgage on the Property, and pay the taxes and utility costs are recoverable, (2) whether Delaney properly perfected his alleged interest in the Property by filing the Affidavit of Lien Interest; and (3) whether an equitable lien in favor of Delaney has been imposed by operation of law, and whether this Court has the ability to impose such an equitable lien. The issues raised by PHH Mortgage Corporation and Citizens Bank are applicable to the determination as to the priority of Delaney's claim in relation to the claims of PHH Mortgage Corporation and Citizens Bank, as well as to the dischargeability of the alleged debt owed by the Plaintiff to Delaney.

## DISCUSSION

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Federal Rule of

Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

## II. Whether Delaney has an Interest in the Property

The first issue the Court must decide is what interest Delaney has, if any, in the Property. Delaney makes three alternative arguments: (1) that he has an ownership interest in the Property[1]; (2) that the Affidavit of Lien Interest he filed on August 29, 2009, created a lien interest in the Property; and (3) that an equitable lien in his favor has been imposed by operation of law, or, this Court should lift the automatic stay to allow Delaney to continue his state court action allow the state court to impose an equitable lien on the Property. PHH Mortgage Corporation and Citizens Bank argue that (1) Delaney cannot argue that he has both an ownership interest and a lien interest in the Property because one cannot have a lien on Property he owns; (2) the Affidavit of Lien Interest filed by Delaney did not perfect a lien interest in the Property because Delaney did not comply with the requirements set forth in Mich. Comp. Laws

---

[1] Delaney does not specifically articulate this argument in his briefs or memoranda of law, but PHH Mortgage Corporation and Citizens Bank address this issue and the possible repercussions of Delaney claiming an ownership interest while also, or in the alternative, claiming a lien interest in the Property.

Ann. § 565.25(1); and (3) an equitable lien has not been imposed in his favor by operation of law, and this Court does not have the ability to impose an equitable lien on the Property.

### A. Whether Delaney has an Outright Ownership Interest in the Property

First, Delaney does not seem to claim or make the argument that he has an ownership interest in the Property. Three documents attached to Delaney's Motion for Summary Judgment could support Delaney's ownership claims: (1) in Exhibit M, Delaney claims that "owned" the Property as of March 13, 1994; (2) in Exhibit O, the form references that the transaction will result in a mortgage or security interest "on your home;" and (3) in Exhibit CC, the loan application indicates that Delaney "owns" the Property. Those documents, however, are mortgage documents, which cannot be read to grant Delaney an ownership interest in the Property, and there is no deed or other like instrument that grants Delaney an outright ownership interest in the Property. At least at this time, where Delaney does not appear to be arguing that he has an outright ownership interest in the Property and where there is no documentation indicating that Delaney has an ownership interest in the Property, the Court concludes that Delaney does not own the Property. Therefore, the Court need not address PHH Mortgage Corporation's and Citizens Bank's argument that Delaney cannot impose a lien, equitable or otherwise, on his own Property.

### B. Whether Delaney's Affidavit of Lien Interest Created a Lien Interest in the Property

Second, Delaney argues that the Affidavit of Lien Interest he filed on August 29, 2009, created a lien interest in the Property. PHH Mortgage Corporation and Citizens Bank argue that (1) Delaney did not properly perfect a lien interest in the Property when he filed the Affidavit of Lien Interest because he failed to comply with the requirements set forth in Mich. Comp. Laws Ann. § 565.25(1); and (2) the Affidavit of Lien Interest, although recorded, is not effective notice

because it fails to appear in the chain of title. In his Reply, Delaney argues that: (1) he properly recorded his Affidavit of Lien Interest pursuant to Mich. Comp. Laws Ann. § 565.451 (2) the Affidavit of Lien Interest provided constructive notice of Delaney's claims against the Property; (3) the Affidavit of Lien Interest does appear in the chain of title; and (4) Citizens Bank and PHH Mortgage Corporation, as assignee from Citizens Bank, had actual notice of the Affidavit of Lien Interest because Delaney personally hand-delivered it to a loan officer at the Citizens Bank branch in Fowlerville, Michigan.

PHH Mortgage Corporation and Citizens Bank argue that Delaney did not properly perfect a lien interest in the Property when he filed the Affidavit of Lien Interest because he did not comply with Mich. Comp. Laws Ann. § 565.25(1). That statute states:

> the recording of a levy, attachment, lien, lis pendens, sheriff's certificate, marshal's certificate, or other instrument of encumbrance does not perfect the instrument of encumbrance unless both of the following are found by a court of competent jurisdiction to have accompanied the instrument when it was delivered to the register under section 24(1) of this chapter:
>
> (a) A full and fair accounting of the facts that support recording of the instrument of encumbrance and supporting documentation, as available.
>
> (b) Proof of service that actual notice has been given to the recorded landowner of the land to which the instrument of encumbrance applies.

M.C.L.A. 656.25(1).

Delaney failed to comply with Mich. Comp. Laws. Ann. § 565.25(1)(a) and (b). The only supporting documents attached the Affidavit of Lien Interest were copies of deeds conveying the Property either to the Lucas or to Marda Lucas. There was no supporting documentation attached that would support the payments Delaney alleges he made on toward the mortgages on the Property, the utility bills and taxes, or the renovation of the Property. Moreover, there was no Proof of Service attached to the Affidavit of Lien Interest to show that

9

actual notice was given to land owner at the time the Affidavit of Lien Interest was delivered to the Register of Deeds for recordation. Delaney does not dispute the fact that he failed to comply with Mich. Comp. Laws. Ann. § 565.25(1), rather, he argues that the form and recordability of his Affidavit of Lien Interest was specifically authorized under Mich. Comp. Laws. Ann. § 565.451, *et seq*. and he fully complied with the requirements therein. Specifically, he argues that he was authorized to file his Affidavit of Lien Interest under Mich. Comp. Laws. Ann. § 565.451a(b) and (e).

Mich. Comp. Laws Ann. § 565.451a governs the recording of an affidavit and provides:

Sec. 1a. An affidavit stating facts **relating to any of the following matters** which may affect the title to real property in this state made by any person having knowledge of the facts or by any person competent to testify concerning such facts in open court, may be recorded in the office of the register of deeds of the county where the real property is situated:

(a) Birth, age, sex, marital status, death, name, residence, identity, capacity, relationship, family history, heirship, homestead status and service in the armed forces of parties named in deeds, wills, mortgages and other instruments affecting real property;

(b) Knowledge of the happening of any condition or event which may terminate an estate or interest in real property;

(c) Knowledge of surveyors duly registered under the laws of this state with respect to the existence and location of monuments and physical boundaries, such as fences, streams, roads and rights of way of real property;

(d) Knowledge of such registered surveyors reconciling conflicting and ambiguous descriptions in conveyances with descriptions in a regular chain of title;

(e) Knowledge of facts incident to possession or the actual, open, notorious and adverse possession of real property; or

(f) Knowledge of the purchaser, or in the case of a corporation, of its president, vice president, secretary or other duly authorized representative acting in a fiduciary or representative capacity, of real property sold upon foreclosure or conveyed in lieu of foreclosure of a trust mortgage or deed of trust securing an issue of bonds or other evidences of indebtedness, or of any mortgage, land

> contract or other security instrument held by a fiduciary or other representative, as
> to the authority of such purchaser to purchase the real property and as to the terms
> and conditions upon which the real property is to be held and disposed of.

M.C.L.A. 656.451a (emphasis added).

Delaney claims that the Affidavit of Lien Interest he filed falls into either category (b) (knowledge of the happening of any condition or event which may terminate an estate or interest in real property) or (e) (knowledge of facts incident to possession or the actual, open, notorious and adverse possession of real property) enumerated in Mich. Comp. Laws Ann. § 565.451a. A review of those categories, however, indicates that neither cover the Affidavit of Lien Interest filed by Delaney. In filing the Affidavit of Lien Interest, Delaney was attempting to create a lien interest and was not simply attempting to provide an affidavit of facts relating to knowledge of the happening of any condition or event which may terminate an estate or interest in real property or knowledge of facts incident to possession of the Property. The Court concludes that the Affidavit of Lien Interest was not effective under Mich. Comp. Laws Ann. § 565.451a, that Delaney failed to comply with the requirements set forth in Mich. Comp. Laws. Ann. § 565.25(1), and, therefore, the filing of the Affidavit of Lien Interest was insufficient to perfect a lien interest in the Property. Accordingly, the Court need not address the arguments raised regarding actual notice, constructive notice, and the Affidavit of Lien Interest being recorded in or out of the chain of title.

    C. <u>Whether Delaney Has, Or Is Entitled To, an Equitable Lien Interest in the Property</u>

In his post-hearing Memorandum of Law Regarding an Equitable Lien in His Favor Against the Property, Delaney argues that: (1) an equitable lien in his favor and against the Property arose by operation of law and without the need for a formal judicial decision under Michigan law; and (2) even if an equitable lien did not arise by operation of law, the automatic

11

stay should be lifted to allow him to continue his pre-petition state court action for a judgment declaring an equitable lien against the Property.

In its Response to Delaney's Memorandum, PHH Mortgage Corporation restates its argument that Delaney cannot obtain a lien, equitable or otherwise, against the Property because he claims that he has an ownership interest in the Property. It also argues that, even if this Court determines that an equitable lien has been imposed by operation of law or the state court imposes an equitable lien against the Property, the date of the imposition of the equitable lien will be the date of the imposition of such, and this Court should retain jurisdiction to determine the amount of any such lien and the priority thereof.

> "In the absence of a written contract, an equitable lien will be established only where, through the relations of the parties, there is a clear intent to use an identifiable piece of property as security for a debt."

*Senters v. Ottawa Sav. Bank,* 443 Mich. 45, 53, 503 N.W.2d 639 (1993).

> The court explained the equitable basis for the remedy.

> " '[E]quity will declare a lien out of considerations of right and justice, based upon those maxims which lie at the foundation of equity jurisprudence.' "

*Id.,* quoting from *Kelly v. Kelly,* 54 Mich. 30, 47, 19 N.W. 580 (1884).

> However, as the Sixth Circuit Court of Appeals has stated in a similar context:

> The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor. "Ratable distribution among all creditors" justifies the Code's placement of the trustee in the position of a first-in-line judgment creditor and bona fide purchaser for value, empowered to avoid certain competing interests (and even to nullify the debtor's "preferential" prepetition payments to otherwise entitled creditors) so as to maximize the value of the estate.

12

11-03174-dof    Doc 112    Filed 06/21/13    Entered 06/21/13 10:05:25    Page 12 of 20

*XL/Datacomp, Inc. v. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443, 1452 (6th Cir. 1994) (footnote omitted).

> In *Omegas Group,* the court held that a constructive trust, which is similar to an equitable lien, cannot be imposed by the bankruptcy court. The court stated, "Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' defendant's property or assets with a constructive trust." *Omegas Group,* 16 F.3d at 1451.

*In re Ackhoff*, 281 B.R. 889, 894 (Bankr. E.D. Mich. 2001).

Based on the decision in *Omegas Group*, it is clear that this Court cannot impose an equitable lien on the Property. However, since deciding *Omegas Group*, the Sixth Circuit Court of Appeals has clarified several relevant points. Specifically, in *Kitchen v. Boyd (In re Newpower)*, 233 F3d 922, 936 (6th Cir. 2000), the Sixth Circuit Court of Appeals "held that creditors who had initiated proceedings in state court prepetition may have the automatic stay lifted to pursue their action and that [its] decision in *Omegas Group* 'does not bar the enforcement of such a judgment in the bankruptcy court.'" *Poss v. Morris (In re Morris)*, 260 F.3d 654, 667 (6th Cir. 2001). The Court noted: "Of course, whether a judgment obtained by a creditor in a state court proceeding initiated prepetition but concluded postpetition following the lifting of the automatic stay has an effective date prior to the filing of a bankruptcy petition is a matter left to state law." *Id*.

In this case, the best course of action is for the Court to lift to the automatic stay to allow the parties to continue the state court litigation initiated prepetition to allow the state court to determine whether an equitable lien was imposed by operation of law based on the facts of the case or whether to impose an equitable lien on the Property. In the event that the state court determines that Delaney has an equitable lien interest in the Property, this Court would have jurisdiction to determine the priority of such lien and the dischargeability thereof.

### III. Whether Summary Judgment is Appropriate on the Dischargeability Issues

#### A. 11 U.S.C. § 523(a)(2)(A)

Under section 727 of the Bankruptcy Code, a debtor may obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, there are exceptions for certain obligations, including debts for money obtained by fraud or by use of a false statement in writing. 11 U.S.C. § 523(a)(2)(A) & (B). A discharge under section 727 does not discharge an individual debtor from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*In re Rembert,* 141 F.3d 277, 280 (6th Cir. 1998). Whether a debtor possessed intent to deceive is measured by a subjective standard. *Id.*

Plaintiff must show each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Even so, the court must construe all of the exceptions to discharge strictly, and must give the benefit of the doubt to debtor. *Rembert,* 141 F.3d at 281.

Delaney argues that the Plaintiff obtained money, services, and credit from Delaney for the purchase of the Property, the construction of the structures on the Property, the furnishing of the Property, and the maintenance of the Property, and could only have done so through misrepresentations concerning Delaney's ownership rights to the Property.

14

There are remaining questions of fact with regard to (1) whether Lucas ever made a representation that Delaney would be granted or had been granted an interest in the Property; (2) whether Lucas made those statements, if at all, knowing that they were false; (3) whether Lucas made those statements with the requisite intent to deceive Delaney; and (4) whether Delaney justifiably relied on Lucas's statements given that he claims that she misrepresented the fact that he had already been granted an interest in the Property but he failed to actually look at the deeds. Therefore, Delaney's Motion for Summary Judgment with regard to his 11 U.S.C. § 523(a)(2)(A) claim is denied.

### B. 11 U.S.C. § 523(a)(2)(B)

Section 523(a)(2)(B) excepts from discharge debts incurred by use of a false statement in writing. To prevail on a Section 523(a)(2)(B) claim, a plaintiff must establish the following elements regarding the writing:

> (i) that it is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive.

*See Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985).

A document that is "written, signed, adopted or used by the debtor" qualifies as a statement in writing under this section. *Insouth Bank v. Michael (In re Michael)*, 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001).

Under the first element, a written statement is materially false if the information in it "offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit." *Id.*, *citing In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985).

The second element requires that the statement refer to the debtor's financial condition.

The third element requires the plaintiff/creditor to establish reasonable reliance on the written statement. Reasonable reliance is not defined in the Bankruptcy Code. Case law generally holds that it is determined objectively based on the totality of the circumstances. *In re Michael,* 265 B.R. at 598.

> The determination of the reasonableness of the creditor's reliance on a false statement in writing is judged by utilizing such factors as:
>
> (1) whether there had been previous business dealings between the debtor and the creditor;
> (2) whether there were any warnings that would alert a reasonably prudent person to the debtor's misrepresentations;
> (3) whether a minimal investigation would have uncovered the inaccuracies in the debtor's financial statements; and
> (4) the creditor's standard practices in evaluating creditworthiness and the standards or customs of the creditor's industry in evaluating creditworthiness.

*Id.*

The fourth element requires that the debtor make or publish the statement with "intent to deceive."

> The standard . . . is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied . . . That is, the debtor must have been under some duty to provide the creditor with his financial statement; but full discharge may be disallowed if the debtor either intended the statement to be false, or the statement was grossly reckless as to its truth.

*Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985)(citations omitted).

Delaney argues that the Plaintiff made materially false written statements regarding her financial condition as it related to her joint ownership of the Property with Delaney in the mortgage loan applications she completed with him, that she intended to deceive Delaney when she made those statements, and that he relied on those statements. Here, there are remaining questions of fact with regard to (1) whether Lucas made false statements regarding her financial

16

condition in writing to Delaney; (2) whether Lucas made those statements with the intent to deceive Delaney; and (3) whether Delaney relied on those representations when he applied for the mortgages with Lucas. Therefore, Delaney's Motion for Summary Judgment is denied with regard to his 11 U.S.C. § 523(a)(2)(B) is denied.

C. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) authorizes a bankruptcy court to exclude a debtor from receiving a discharge "from any debt for willful and malicious injury by the debtor to another entity or the property of another entity." The exceptions to discharge are to be narrowly construed in favor of the debtor. *Monsanto Co., v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) (recognizing "the axiom that requires this court to construe exceptions to the bankruptcy discharge narrowly and in favor of the debtor.") (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)). A party must prove by a preponderance of the evidence that a debtor committed an injury that is both willful <u>and</u> malicious. *Grogan v. Garner*, 498 U.S. 279 (1991).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court discussed and determined the meaning of the language used in 11 U.S.C. § 523(a)(6). The issue before the United States Supreme Court involved "whether a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct" fell within 11 U.S.C. § 523(a)(6). *Id*. at 59. The Kawaauhaus argued that the malpractice award fell within the Section 523(a)(6) exception because Dr. Geiger engaged in the intentional act of providing inadequate medical services which led to Mrs. Kawaauhau's injury. *Id*. at 61.

In analyzing the parameters of the language "willful and malicious injury," the United States Supreme Court found that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act*," not simply "*the act itself*."

*Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The United States Supreme Court further determined that to adopt the interpretation proposed by the Kawaauhaus would:

> place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. . . . A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the 'well-known guide that exceptions to discharge "should be confined to those plainly expressed.'

*Id*. at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

More than a year later, the Sixth Circuit Court of Appeals considered the "willful and malicious injury" language contained in § 523(a)(6), in *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999). The Sixth Circuit Court of Appeals interpreted *Geiger* and noted that:

> [t]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.

18

*Id*. at 464.

Based on the language used and analysis of the United States Supreme Court in *Geiger*, the *Markowitz* Court announced the standard of the Sixth Circuit Court of Appeals by holding that:

> unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Id*. (quoting Restatement (Second) of Torts § 8A, at 15 (1964)); *see Kennedy v. Mustaine*, 249 F.3d 576, 580 (6th Cir. 2001).

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to prove either willful or malicious, the debt will be discharged. *Markowitz*, 190 F.3d at 463. Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such:

> Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind. A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000) (citations omitted).

Delaney claims that Lucas consciously disregarded her legal duty to disclose the true nature of the ownership of the Property during the 20 year period that Delaney paid the mortgage loans, maintenance, and utilities on the Property. Here, there are remaining questions of fact

regarding (1) whether there was any understanding between the parties that Delaney would be granted, or had been granted, an interest in the parties; and (2) Lucas's state of mind. Therefore, Delaney's Motion for Summary Judgment with regard to his 11 U.S.C. § 523(a)(6) claim is denied.

## CONCLUSION

For the reasons set forth herein, the Court concludes that (1) Delaney does not have an outright ownership interest in the Property; (2) Delaney failed to properly perfect a lien interest in the Property by filing the Affidavit of Lien Interest; (3) this Court cannot impose an equitable lien on the Property, and, therefore, the automatic stay is lifted to permit the parties to continue the state court litigation that was initiated prepetition; and (4) Delaney's Motion for Summary Judgment is denied with regard to his 11 U.S.C. §§ 523(a)(2)(A) and (B), and (a)(6) claims.

Counsel for Delaney is directed to prepare and present an Order consistent with this Opinion and the procedural rules of this Court.

.

**Signed on June 21, 2013**

                                       **/s/ Daniel S. Opperman**
                                       **Daniel S. Opperman**
                                       **United States Bankruptcy Judge**